1  Raymond P. Boucher, State Bar No. 115364
     *ray@boucher.la*
2  Maria L. Weitz, State Bar No. 268100
     *weitz@boucher.la*
3  Jean Sedlak, State Bar No. 267659
     *Sedlak@boucher.la*
4  BOUCHER LLP
   21600 Oxnard Street, Suite 600
5  Woodland Hills, California 91367-4903
   Tel:   (818) 340-5400
6  Fax:   (818) 340-5401

7  *Attorneys for Plaintiff and the Putative Class*

8

9              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
10

11 SARA DEROSA, Individually, and On      Case No.
   Behalf of others similarly situated,
12                                          <u>CLASS ACTION COMPLAINT</u>
                 Plaintiff,                 1.  UNPAID OVERTIME -
13                                          VIOLATION OF FLSA
          v.                                2.  UNPAID OVERTIME -
14                                          VIOLATION OF NYLL
                                            3.  UNLAWFUL DEDUCTIONS -
15 VIACOMCBS INC.; CBS                      VIOLATION OF NYLL
   TELEVISION STUDIOS, A                    4.  FAILURE TO PROVIDE WAGE
16 DIVISION OF CBS STUDIOS, INC.;           STATEMENT - VIOLATION OF
   SESSIONS PAYROLL                         NYLL
17 MANAGEMENT, INC.; FIRSTHAND             5.  FAILURE TO PROVIDE WAGE
   PRODUCTIONS, INC.; EAST END             NOTICES - VIOLATION OF NYLL
18 PRODUCTIONS, INC.; SNAPSHOT             6.  CONVERSION
   PRODUCTIONS, INC.; GAIL                  7.  FAILURE TO TIMELY PAY
19 LEVINE; GREGG LEVINE; BOARD             WAGES - VIOLATION OF NYLL
   OF TRUSTEES OF THE AFTRA               8.  FRAUDULENT FILING OF
20 RETIREMENT FUND; BOARD OF              INFORMATION RETURNS -
   TRUSTEES OF THE SAG                      VIOLATION OF 26 U.S.C. § 7344
21 PRODUCERS PENSION PLAN;                9.  BREACH OF FIDUCIARY DUTY
   BOARD OF TRUSTEES OF THE                – VIOLATION OF ERISA
22 SAG-AFTRA HEALTH PLAN;  and            10. ACCOUNTING
   DOES 1-50,
23
24
                 Defendants.
25 _____
26
27
28
   00153810.21

─────────────────────────────────────────────
       CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff SARA DEROSA, on behalf of herself and all other similarly situated individuals, as defined below, hereby alleges the following facts and claims against defendants SESSIONS PAYROLL MANAGEMENT, INC., a California Corporation ("Sessions Payroll"), FIRSTHAND PRODUCTIONS, INC., a California Corporation from approximately January 2014 until it was dissolved in February 2016, EAST END PRODUCTIONS, INC., a California Corporation from approximately February 2016 until it was dissolved in approximately January 2018, SNAPSHOT PRODUCTIONS, INC., a California Corporation from approximately 2017 until it was dissolved in approximately February 2020, Gail Levine, and Gregg Levine (collectively "Payroll and Staffing Defendants"); VIACOMCBS INC., a Delaware Corporation, CBS TELEVISION STUDIOS, a division of CBS STUDIOS, INC., a Delaware Corporation (collectively "CBS"); and DOES 1-50 (Payroll and Staffing Defendants, CBS, and DOES 1-50 collectively "Employer Defendants"), and the BOARD OF TRUSTEES OF AFTRA RETIREMENT FUND, BOARD OF TRUSTEES OF SCREEN ACTORS GUILD PRODUCERS PENSION PLAN, and BOARD OF TRUSTEES OF SAG-AFTRA HEALTH PLAN[1] (collectively "Plan Defendants") (Employer Defendants and Plan Defendants collectively "Defendants") and respectfully requests a trial by jury of all issues and causes of action so triable.

## INTRODUCTION

1.      This case exposes a complex and sophisticated scheme of theft and fraud that Defendants engaged in over a number of years. Defendants would have gotten away with it if not for the vigilance and tireless efforts of the plaintiff, SARA DEROSA ("Plaintiff") who is the only Class Member to have figured out what Defendants were doing and who tried to stop it. Yet, despite her efforts over many years, Defendants stonewalled and ignored her, hoping she would simply go away.

---

[1] The SAG Health Plan and AFTRA Health Plan were two separate entities until their merger in 2017, when they became the SAG-AFTRA Health Plan.

00153810.21

But, instead of giving up, Plaintiff brings this class action lawsuit on behalf of all affected Class Members to compensate them for Defendants' acts of wrongdoing.

2.      In 2014, Plaintiff discovered that, since 2010, her wages paid through Sessions Payroll had not been reported to the Social Security Administration ("SSA") or Internal Revenue Service ("IRS"). This problem continued after Plaintiff began working on "Madam Secretary" in September 2014. Upon information and belief, deductions that had been made from her wages for Medicare, Social Security, Federal income tax, New York State income tax, and New York City income tax were not remitted to the proper government agencies. Plaintiff also discovered that her earnings were being underreported, and employer contributions were being underpaid, to her pension plan and health plan. Plaintiff also discovered that other stand-ins and background actors, working on shows such as "The Good Fight," "Bull," "BrainDead" and "Madam Secretary," were being subjected to the same practices.

3.      This conduct, as set forth in this Complaint, violates a number of federal and state laws protecting employees. Since 2014, Plaintiff has made numerous complaints to Sessions Payroll and to her health and retirement plans about the problem. While Sessions Payroll acknowledged that it was aware of the problem, and that many people had been affected, it failed to take any remedial action. Nor did the health and retirement plans take any steps to remedy the problem. Thereafter, Plaintiff alerted CBS management to what she had found, and implored them to investigate the problem. Unfortunately, CBS management did nothing. Having no other viable choice, in order to protect herself and the other Class Members, Plaintiff brings this class action lawsuit.

4.      This class action complaint challenges Defendants' past and ongoing unlawful practices and policies on behalf of Plaintiff and current and former non-exempt hourly employees who worked for Employer Defendants as "background actors" or "stand-ins" whose rights Defendants violated and continue to violate under the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), New

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

York Common Law, 26 U.S.C. § 7434(a), and the Employee Retirement Income Security Act of 1974 ("ERISA") during the applicable statutory period (collectively "Class Members" and "Class Period").[2]

5.     With respect to Plaintiff and Class Members, the Employer Defendants have uniformly and systematically:

    a.  Failed and continue to fail to pay them overtime compensation for every hour worked over 40 per week based on the appropriate regular rate of pay in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.* the NYLL, Article 19, §§ 650, *et seq.* and 12 N.Y.C.R.R. § 142-2.2;

    b.  Made unlawful deductions from their wages in violation of NYLL § 193;

    c.  Failed and continue to fail to furnish them with a statement with every payment of wages listing the name of the employer, the address and phone number of the employer, the correct rate or rates of pay, the regular rate of pay, the correct overtime rate of pay, and a truthful description of each of the deductions from their wages in violation of NYLL § 195(3);

    d.  Failed and continue to fail to provide them with a notice at the time of hiring containing the rates of pay and basis thereof, the regular rate of pay, the overtime rate of pay, the name of the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different, and a telephone number of the employer, in violation of NYLL § 195(1);

    e.  Converted their wages in violation of New York law;

---

[2] Further defined below as "FLSA Collective Class Members," "New York Wage and Hour Class Members," "Fraudulent Information Returns Class Members," "AFTRA Retirement Plan Class Members," "SAG Producers Pension Plan Class Members," and "SAG-AFTRA Health Plan Class Members."

00153810.21

f.  Failed to pay them their wages earned at least semi-monthly in violation of NYLL § 191(1)(d); and

g.  Filed fraudulent information returns for them in violation of 26 U.S.C. § 7434(a).

6.   Employer Defendants also underreported Plaintiff's and Class Members' wages to the Plans, and underpaid contributions they owed to the Plans for the benefit of Plaintiff and Class Members. The Plan Defendants uniformly and systematically failed to take action in response, in breach of their fiduciary duties pursuant to 29 U.S.C. § 1109(a).

## JURISDICTION AND VENUE

7.   This Court has exclusive jurisdiction over this action under 28 U.S.C. § 1331, 29 U.S.C. § 216(b), and 29 U.S.C. § 1132(e)(l). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.   Jurisdiction is proper in the Central District of California pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because at least one Class Member is of diverse citizenship from one Defendant, there are more than 100 Class Members, and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

9.   Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2)-(3) because a substantial part of the events giving rise to the claims asserted in this action occurred in this judicial district and because multiple Defendants reside in this judicial district. Venue is also proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) because some of the fiduciary breaches for which relief is sought occurred in this district, the SAG Producers Pension Plan and SAG-AFTRA Health Plan are administered in this district, and multiple Defendants reside in this district.

## PARTIES

10.   Plaintiff SARA DEROSA is an individual over the age of eighteen (18) and is a New York citizen residing in New York City. At all relevant times alleged

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

herein, Plaintiff has been employed by Employer Defendants as a stand-in and has been an "employee" as that term is used under the FLSA and NYLL. Throughout the applicable statutory period, Plaintiff was subject to various policies, procedures, and practices implemented by the Employer Defendants that, as alleged herein, were and are in violation of the FLSA, the NYLL, New York common law, and 26 U.S.C. § 7434(a). Throughout the applicable statutory period, Plaintiff has been a participant in each of the Plans within the meaning of 29 U.S.C. § 1002(7), and was subjected to the various policies, procedures, and practices implemented by each of the Plan Defendants that, as alleged herein, violated their fiduciary duties pursuant to 29 U.S.C. § 1109(a). As a result, Plaintiff has received reduced contributions to the Plans from the Employer Defendants, resulting in a reduction of the benefits she is owed under the Plans.

11.    Defendant Gail Levine is an executive and/or owner of SESSIONS PAYROLL MANAGEMENT, INC., SNAPSHOT PRODUCTION, INC., and/or the other Payroll and Staffing Defendants, and/or DOE Defendants 1-50. Upon information and belief, at all relevant times alleged herein, she, along with Gregg Levine and/or DOE Defendants 1-50, controlled the operations and determined the policies and practices of the Payroll and Staffing Defendants, and/or DOE Defendants 1-50, including, but not limited to, how employees are and were compensated, the deductions withheld from their wages, the remittance of such deductions to the proper government agencies, the filing of information returns, and the reporting of earnings and transmission of contributions to Plaintiff's and Class Members' health and pension plans. Defendant Gail Levine was and remains an "employer" within the meaning of the FLSA and NYLL.

12.    Defendant Gregg Levine is an executive and/or owner of EAST END PRODUCTIONS, INC. and/or the other Payroll and Staffing Defendants, and/or DOE Defendants 1-50. Upon information and belief, at all relevant times alleged herein, he, along with Gail Levine and/or DOE Defendants 1-50, controlled the operations of

and determined the policies and practices of the Payroll and Staffing Defendants, and/or DOE Defendants 1-50, including, but not limited to, how employees are and were compensated, the deductions withheld from their wages, the remittance of such deductions to the proper government agencies, and the reporting of earnings and transmission of contributions to Plaintiff's and Class Members' health and pension plans. Defendant Gregg Levine was and remains an "employer" within the meaning of the FLSA and NYLL.

13.     Upon information and belief, Gail Levine and Gregg Levine are closely related to one another.

14.     Defendant SESSIONS PAYROLL MANAGEMENT, INC., is a California Corporation with a principle place of business at 303 North Glenoaks Boulevard, Suite 910, Burbank, California 91502. Throughout the maximum statute of limitations period, SESSIONS PAYROLL MANAGEMENT, INC. has been an "employer" under the NYLL and FLSA. Upon information and belief, the amount of qualifying annual volume of business for Defendant SESSIONS PAYROLL MANAGEMENT, INC. has exceeded $500,000, and Defendant SESSIONS PAYROLL MANAGEMENT, INC. is engaged in interstate commerce. Gail Levine is identified as a Senior Vice President of SESSIONS PAYROLL MANAGEMENT, INC. on the company's website.[3] Defendant SESSIONS PAYROLL MANAGEMENT, INC. was identified as an employer on Plaintiff's and Class Members' wage statements and W-2s in 2017.

15.     Defendant FIRSTHAND PRODUCTIONS, INC. was registered as a California Corporation from approximately January 2014 until it was dissolved in approximately February 2016. Defendant FIRSTHAND PRODUCTIONS, INC.'s principle place of business was at 225 East Broadway, Suite 315, Glendale, California

---

[3] *See Contact Information*, SESSIONS PAYROLL MANAGEMENT INC. https://www.sessionspayroll.com/contact-us/ (last visited Mar. 13, 2020).

00153810.21

91205. According to the Statement of Information filed with the California Secretary of State on February 2, 2014, the "TYPE OF BUSINESS OF [FIRSTHAND PRODUCTIONS, INC.]" was "PRODUCTION BACKGROUND EXTRAS." At all relevant times alleged herein, FIRSTHAND PRODUCTIONS, INC. has been an "employer" under the NYLL and FLSA. Upon information and belief, from approximately January 2014 until approximately February 2016, the amount of qualifying annual volume of business for Defendant FIRSTHAND PRODUCTIONS, INC. exceeded $500,000, and FIRSTHAND PRODUCTIONS, INC. was engaged in interstate commerce. Defendant FIRSTHAND PRODUCTIONS, INC. was identified as an employer on Plaintiff's and Class Members' wage statements and W-2s from approximately 2014 through approximately early 2016.

16.    Defendant EAST END PRODUCTIONS, INC. was registered as a California Corporation from approximately February 2016 until it was dissolved in approximately January 2018. Defendant EAST END PRODUCTIONS, INC.'s principle place of business was 225 East Broadway, Suite 301B, Glendale, California 91205. According to its Statement of Information filed with the California Secretary of State on August 16, 2017, Gregg Levine was the company's Chief Executive Officer, Secretary, Chief Financial Officer, and sole director. According to the company's website, EAST END PRODUCTIONS, INC. provided background extras to productions.[4] At all relevant times alleged herein, EAST END PRODUCTIONS, INC. has been an "employer" under the NYLL and FLSA. Upon information and belief, from approximately February 2016 until approximately January 2018, the amount of qualifying annual volume of business for Defendant EAST END PRODUCTIONS, INC. exceeded $500,000, and EAST END PRODUCTIONS, INC. was engaged in interstate commerce. Defendant EAST END PRODUCTIONS, INC.

---

[4] *See* EAST END PRODUCTIONS INC., http://east-end-productions.com/about.html (last visited Mar. 12, 2020).

00153810.21

is and was subject to the overtime requirements of the FLSA. Defendant EAST END PRODUCTIONS, INC. was identified as an employer on Plaintiff's and Class Members' wage statements and W-2s from approximately early 2016 through approximately 2017.

17. Defendant SNAPSHOT PRODUCTIONS, INC. was a California Corporation from approximately 2017 until it was dissolved in approximately February 2020, with its principle place of business at 303 N. Glenoaks Blvd., Suite 200, Burbank, CA 91502. According to its Statement of Information filed with the California Secretary of State on November 27, 2017, Gail Levine was the company's Chief Executive Officer, Secretary, Chief Financial Officer, and sole director. At all relevant times alleged herein, SNAPSHOT PRODUCTIONS, INC. has been an "employer" under the NYLL and FLSA. Upon information and belief, the amount of qualifying annual volume of business for Defendant SNAPSHOT PRODUCTIONS, INC. exceeded $500,000, and SNAPSHOT PRODUCTIONS, INC. engaged in interstate commerce. Defendant SNAPSHOT PRODUCTIONS, INC. was identified as Plaintiff's and Class Members' employer on their wage statements and W-2s from approximately 2017 through 2020.

18. Upon information and belief, Gail Levine, Gregg Levine, and DOES 1-50, created and dissolved Payroll and Staffing Defendants, and/or DOE Defendants 1-50, in order to insulate their ill-gotten gains from lawsuits.

19. Defendant VIACOMCBS INC. is an American mass media company with interests primarily in commercial broadcasting, publishing, and television. Its headquarters are located at 51 West 52nd St., New York, New York 10019 and it is organized under the laws of the State of Delaware. At all relevant times, VIACOMCBS INC. has been registered to do business in California, has had offices in Los Angeles, California, and has conducted substantial business in California. VIACOMCBS INC. is an "employer" under the NYLL and FLSA. Upon information and belief, the amount of qualifying annual volume of business for Defendant

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1  VIACOMCBS INC. exceeds $500,000 and VIACOMCBS INC. is engaged in

2  interstate commerce.

3      20.  Defendant CBS TELEVISION STUDIOS, a division of CBS STUDIOS,

4  INC., is an American mass media company with interests primarily in commercial

5  broadcasting, publishing, and television. Its headquarters are located at 4024 Radford

6  Avenue, Studio City, California 91604, and it transacted business in California by

7  employing numerous Class Members in the Los Angeles area to work on various

8  productions. It is an "employer" under the NYLL and FLSA. Upon information and

9  belief, the amount of qualifying annual volume of business for Defendant CBS

10  TELEVISION STUDIOS exceeded $500,000 and CBS TELEVISION STUDIOS is

11  engaged in interstate commerce.

12      21.  Throughout the maximum statute of limitations period, Payroll and

13  Staffing Defendants, and/or DOE Defendants 1-50, provided services to

14  VIACOMCBS INC., and CBS TELEVISION STUDIOS. Such services included, but

15  are not limited to, payroll services such as payroll compliance, making and

16  transmitting payroll deductions and Retirement Plan and Health Plan contributions,

17  and staffing services.

18      22.  At all relevant times, the Employer Defendants jointly employed

19  Plaintiff and the other Class Members and together formed a "single integrated

20  enterprise."

21      23.  Defendant BOARD OF TRUSTEES OF THE AFTRA RETIREMENT

22  FUND administers the AFTRA Retirement Fund, and is located at 261 Madison

23  Avenue, 7th Floor, New York, New York 10016. The BOARD OF TRUSTEES OF

24  THE AFTRA RETIREMENT FUND is made up of representatives from SAG-

25  AFTRA and contributing industry employers. The BOARD OF TRUSTEES OF THE

26  AFTRA RETIREMENT FUND has been the fiduciary of the AFTRA Retirement

27  Fund at all relevant times alleged herein.

28      24.  Defendant BOARD OF TRUSTEES OF THE SAG PRODUCERS

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

PENSION PLAN administers the SAG Producers Pension Plan, and is located at 3601 West Olive Avenue, Burbank, California 91505.  The BOARD OF TRUSTEES OF THE SAG PRODUCERS PENSION PLAN is made up of representatives from the Screen Actors Guild and contributing industry employers. The BOARD OF TRUSTEES OF THE SAG PRODUCERS PENSION PLAN has been the fiduciary of the SAG Producers Pension Plan at all relevant times alleged herein.

25.    Defendant BOARD OF TRUSTEES OF THE SAG-AFTRA HEALTH PLAN governs the SAG-AFTRA Health Plan, and is located at 3601 West Olive Avenue, Burbank, California 91505. The BOARD OF TRUSTEES OF THE SAG-AFTRA HEALTH PLAN is made up of representatives from SAG-AFTRA and contributing industry employers. The BOARD OF TRUSTEES OF THE SAG-AFTRA HEALTH PLAN has been the fiduciary of the SAG-AFTRA Health Plan at all relevant time alleged herein.

26.    Due to the complex and secretive nature of Defendants' scheme, not all facts regarding each Defendant's role in it are known at this time. Plaintiff will amend the Complaint to add additional allegations following discovery if it is warranted.

27.    The true names and capacities of DOE Defendants 1-50, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such DOE Defendants under fictitious names. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated as a DOE Defendant is in some manner highly responsible for the occurrences alleged herein, and that Plaintiff's and Class Members' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE Defendants. Plaintiff will seek leave of the court to amend this Complaint to allege the true names and capacities of such DOE Defendants when ascertained.

## THE PLANS

28.    The AFTRA Retirement Plan, the SAG Producers Pension Plan, and the SAG-AFTRA Health Plan are and at all times have been "multiemployer plans" as defined in ERISA, 29 U.S.C. § 1002(37).

00153810.21

29.     They were established and maintained in accordance with collective bargaining agreements between SAG-AFTRA (or its predecessor organizations) and employers in the recording, broadcasting, advertising, and other industries pursuant to Trust Agreements.

30.     The BOARD OF TRUSTEES OF THE AFTRA RETIREMENT FUND, the BOARD OF TRUSTEES OF THE SAG PRODUCERS PENSION PLAN, and the BOARD OF TRUSTEES OF THE SAG-AFTRA HEALTH PLAN are fiduciaries of their respective Plans as defined in 29 U.S.C. §§ 1102(a), and 1002(21)(A), and have the authority and duty to collect contributions from the Employer Defendants.

31.     Pursuant to applicable collective bargaining agreements and participation agreements, at all relevant times herein, the Employer Defendants were required to make contributions to the AFTRA Retirement Fund, the SAG Producers Pension Plan, and the SAG-AFTRA Health Plan, for work performed by Plaintiff and Class Members.[5]

32.     The formula used to determine Plaintiff's and Class Members' entitlement to pension and health benefits under the Plans is based upon contributions made to the Plans by Employer Defendants.

## **FACTUAL ALLEGATIONS**

33.     In approximately 2014, Plaintiff checked her Social Security Earnings Record and discovered that her wages paid through Sessions Payroll each year since

---

[5] *See, e.g.*, *Your Benefits Under the AFTRA Retirement Plan*, AFTRA RETIREMENT FUND SUMMARY PLAN DESCRIPTION (SPD), at 4 (June 2019), available at https://aftraretirement.org/docs/default-source/default-document-library/2019_aftra-retirement-fund_spd_rev_b_new-final_w-nav-links.pdf?sfvrsn=0 (last accessed February 3, 2020); *About Us*, SAG PRODUCERS PENSION PLAN, available at https://www.sagaftraplans.org/sag-pension/about-us (last accessed February 3, 2020); *SAG-AFTRA Health Plan*, SUMMARY PLAN DESCRIPTION, at 8 (December 2018), available at https://www.sagaftraplans.org/sites/default/files/inline-files/SPD_healthplan_2016.pdf (last accessed February 3, 2020).

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

2010 had not been reported to the SSA or the IRS. Upon information and belief, money deducted from her wages, purportedly for, *inter alia*, Medicare, Social Security, Federal income tax, New York State income tax, and New York City income tax was never remitted to the government. As a result, Plaintiff has suffered a reduction in the amount of Social Security and Medicare benefits that she is owed.

34.     Plaintiff also noticed that when she was paid through Sessions Payroll, there were multiple times each year when her earnings were underreported and contributions were underpaid to the Plans. This resulted in a reduction in the benefits she was owed under the Plans.

35.     Since 2014, Plaintiff has also learned from a number of stand-ins and background actors that they have experienced the same problems.

36.     Since 2014, and throughout the applicable statutory period, Plaintiff repeatedly reported the foregoing problems to Sessions Payroll and asked that they be remedied. Sessions acknowledged that they were aware of the problems, and that many people had been affected. Plaintiff also repeatedly complained to the Plans about the problem. Plaintiff and another Class Member even created a website devoted to raising awareness of these issues, and other Class Members posted complaints online.[6] However, upon information and belief, no corrective action was taken by Sessions Payroll or the Plans.

37.     Finally, on September 3, 2018, Plaintiff reported the foregoing problems to CBS. CBS promised to investigate. Thereafter, Plaintiff followed up with CBS over a dozen times about the status of the investigation. For nearly a year, CBS failed to

---

[6] *See, e.g.*, *Sessions Payroll's Failure to Report Income – Affecting Stand-ins in the U.S.*, STAND-IN CENTRAL (June 3, 2015), available at https://standincentral.com/2015/06/03/sessions-payrolls-failure-report-income-affecting-stand-ins-u-s/ (last accessed Feb. 3, 2020); Dave M., *Sessions Payroll*, YELP (Oct. 29, 2016), available at https://www.yelp.com/biz/sessions-payroll-burbank (last accessed Feb. 3, 2020).

provide Plaintiff with any substantive answer or resolution. Finally, in August 2019, CBS advised Plaintiff that CBS was no longer using Sessions Payroll and that the problem had been resolved. However, this was false. Upon information and belief, Plaintiff's earnings that had been paid through Sessions Payroll still were not fully reflected on her SSA record, nor were all of her wage deductions remitted to the proper government agencies. Additionally, her earnings still had not been fully reported, and employer contributions had still not been fully paid to the Plans.

38.   At all relevant times the Employer Defendants employed Plaintiff and Class Members and subjected them to the same various policies, procedures, and practices implemented by Defendants that, as alleged herein, were and are in violation of the FLSA, NYLL, ERISA, 26 U.S.C. § 7434, and common law.

39.   As is explained above, throughout the applicable statutory period, the Employer Defendants made deductions from Plaintiff's and Class Members' wages purportedly for, *inter alia*, Medicare, Social Security, Federal income tax, New York State income tax, and New York City income tax. Instead of remitting this money to the proper government agencies, it was retained by Employer Defendants. This scheme left Plaintiff and Class Members vulnerable to audits and penalties. They have also suffered a reduction in the Social Security and Medicare benefits they are owed.

40.   Additionally, throughout the applicable statutory period, the Employer Defendants failed to pay Plaintiff and Class Members for all of their hours worked over 40 per week at a rate of one-and-one-half times their regular rate of pay. Pursuant to their agreements with Employer Defendants, Plaintiff and Class Members were entitled to additional pay for night time work. In calculating Plaintiff's and Class Members' overtime rates of pay, the Employer Defendants failed to include, *inter alia*, Plaintiff's and Class Members' shift differential for the hours they worked at the night time rate. Additionally, as a result of the Employer Defendants' unlawful deductions from Plaintiff's and Class Members' wages, they were not paid for all of their hours worked over 40 per week at a rate of one-and-one-half times their regular

1    rate of pay.

2        41.    Additionally, at the time they hired Plaintiff and Class Members, the

3    Employer Defendants failed to provide them with a notice of their rates of pay, the

4    basis thereof, their regular rate of pay, their overtime rate of pay, the names of their

5    employers, the physical address of their employers' main office or principal place of

6    business, and a mailing address if different, and with their employers' telephone

7    numbers.

8        42.    Throughout the applicable statutory period, the Employer Defendants

9    failed to provide Plaintiff and Class Members with a wage statement each pay period

10   listing the names of their employers, the addresses and phone numbers of their

11   employers, their regular hourly rates of pay, their correct overtime rates of pay, and a

12   description of each of the deductions from their wages that was accurate rather than

13   false and misleading.

14       43.    Throughout the applicable statutory period, the Employer Defendants

15   failed to pay Plaintiff and Class Members all of their wages earned at least semi-

16   monthly as a result of, *inter alia*, their failure to pay them overtime at the appropriate

17   rate, and their unlawful deductions from and conversion of Plaintiff's and Class

18   Members' wages.

19       44.    Throughout the applicable statutory period, the Employer Defendants

20   have willfully filed fraudulent information returns for Plaintiff and Class Members

21   that underreported the amount the Employer Defendants withheld from Plaintiff's

22   wages for, *inter alia*, Medicare, Social Security, Federal income tax, New York State

23   income tax, and New York City income tax. The Employer Defendants willfully

24   retained money they deducted from Plaintiff's and Class Members' wages instead of

25   remitting it to the proper government agencies.

26       45.    Throughout the statutory period, the Employer Defendants willfully

27   underreported Plaintiff's and Class Members wages and transmitted less than the full

28   amount of the contributions they owed to the Plans for Plaintiff and Class Members.

46.     Throughout the statutory period, the Plan Defendants knew or should have known that the Employer Defendants were not making the full amount of contributions they owed to the Plans for Plaintiff and Class Members. First, many of the Plan Defendants held executive level positions with the Employer Defendants, including, but not limited to, CBS.[7] They would or should have known through their positions with Employer Defendants that the required contributions were not being made. Secondly, Plaintiff and other Class Members complained to the Employer Defendants and Plan Defendants multiple times that the Employer Defendants were not making the required contributions to the Plans.

47.     Plaintiff and another Class Member even created a website devoted to raising awareness of the problem, and other Class Members posted complaints online as well.[8] At the very least, Plan Defendants should have investigated the allegations of improprieties regarding the Employer Defendants' payments of wages and contributions to the Plans, and insisted that the Employer Defendants contribute all amounts due to the Plan.

48.     However, in breach of their fiduciary duties, the Plan Defendants failed to take any meaningful ameliorative action to protect the Plans and Plaintiff and Class Members from the improper suppression of their retirement benefits and health benefits as a result of the Employer Defendants' intentional suppression of Plan contributions.  As a result, Employer Defendants contributed less than the full amount of contributions they actually owed to the Plans for Plaintiff and Class Members.[9]

---

[7] *See, e.g.*, *Your Benefits Under the AFTRA Retirement Plan*, *supra* note 5 at 56.

[8] *See, e.g.*, *Sessions Payroll's Failure to Report Income*, *supra* note 6; Dave M., *supra* note 6.

[9] This is not the first time that the trustees of any of the plans have been accused of breaching their fiduciary duties.  Recently, after conducting an investigation, the United States Department of Labor concluded that the fiduciaries of the SAG Producers Pension Plan and SAG Health Plan breached their fiduciary duties in

00153810.21

49.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff and Class Members have suffered and continue to suffer from loss of earnings and contributions to the Plans in amounts as yet to be ascertained, but subject to proof at trial in amounts in excess of the minimum jurisdiction of this Court. They have also suffered a reduction to the amount of the benefits they are owed under the Plans.

## FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS

50.     Plaintiff brings a collective action pursuant to 29 U.S.C. §§ 207 and 216(b) on behalf of a proposed collective defined to include all non-exempt hourly employees who worked for Employer Defendants as "background actors" or "stand-ins" in California or New York at any time from March 30, 2017 until the conclusion of this action (the "FLSA Collective Class" and "FLSA Collective Class Period").

51.     Plaintiff reserves the right to modify the proposed collective definition at a later stage of litigation.

52.     Excluded from the FLSA Collective Class are Employer Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Employer Defendants.

53.     Plaintiff is a member of the proposed collective she seeks to represent because she worked for Employer Defendants as a non-exempt hourly employee throughout the maximum statute of limitations period. This action may be properly maintained as a collective action on behalf of the FLSA Collective Class because, during the relevant period:

    a. Plaintiff and the FLSA Collective Class Members had the same employers;

    b. Plaintiff and the FLSA Collective Class Members were governed by

_____

violation of ERISA by charging excessive fees. *See* https://pmcdeadline2.files.wordpress.com/2017/03/sag-pension-watermarked.pdf.

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

the same compensation policies, practices and systems;

c. Plaintiff and the FLSA Collective Class Members were governed by the same payroll policies, practices and systems; and

d. Employer Defendants' labor relations and human resources systems were centrally-organized and controlled, and controlled the policies and practices at issue in this case.

54.    Plaintiff estimates that the FLSA Collective Class, including both current and former employees over the relevant period, will include thousands of members. The precise number of members should be readily available from Employer Defendants' personnel, scheduling, time and payroll records, and from input received from the FLSA Collective Class Members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b). Given the composition and size of the FLSA Collective Class, its members may be informed of the pendency of this action directly via U.S. mail, e-mail and/or the posting of written notices at Employer Defendants' work sites.

## **RULE 23 CLASS ACTION ALLEGATIONS**

55.    Plaintiff brings this class action on behalf of herself and all other similarly situated current and former non-exempt hourly employees who worked for Employer Defendants as "background actors" or "stand-ins" pursuant to Fed. R. Civ. P. 23.

56.    Description of the Classes: The classes Plaintiff will seek to certify are currently composed of and defined as follows:

a. All current and former non-exempt hourly employees who worked for Employer Defendants as "background actors" or "stand-ins" in New York at any time from March 30, 2014 until the conclusion of this action (the "New York Wage and Hour Class" and "New York Wage and Hour Class Period").

b. All current and former non-exempt hourly employees who worked

for Employer Defendants as "background actors" or "stand-ins" in California or New York State at any time from March 30, 2014 until the conclusion of this action (the "Fraudulent Information Returns Class" and "Fraudulent Information Returns Class Period").

c.  All participants and beneficiaries of the AFTRA Retirement Plan who worked for Employer Defendants as "background actors" or "stand-ins" in California or New York at any time from March 30, 2014 to the present until the conclusion of this action (the "AFTRA Retirement Plan Class" and "AFTRA Retirement Plan Class Period").

d.  All participants and beneficiaries of the SAG Producers Pension Plan who worked for Employer Defendants as "background actors" or "stand-ins" in California or New York at any time from March 30, 2014 to the present until the conclusion of this action (the "SAG Producers Pension Plan Class" and "SAG Producers Pension Plan Class Period").

e.  All participants and beneficiaries of the SAG-AFTRA Health Plan who worked for Employer Defendants as "background actors," "stand-ins," or similar, in California or New York at any time from March 30, 2014 to the present until the conclusion of this action (the "SAG-AFTRA Health Plan Class" and "SAG-AFTRA Health Plan Class Period").

57.  The AFTRA Retirement Plan Class, SAG Producers Pension Plan Class, and the SAG-AFTRA Health Plan Class (collectively the "Plan Classes"), the New York Wage and Hour Class, and the Fraudulent Information Returns Class (collectively the "Classes") specifically exclude Defendants, any parent, subsidiary, or affiliate of Defendants, any entity in which Defendants have a controlling

interest, or which Defendants otherwise control, any officers, directors, employees, legal representatives, predecessors, successors, or assignees of Defendants.

58.     Class treatment of Plaintiff's and Class Members' claims is appropriate because the Classes satisfy the requirements of Fed. R. Civ. P. 23.

59.     Each of the Classes is so numerous that joinder of all members would be impracticable. During the New York Wage and Hour Class Period and the Fraudulent Information Returns Class Period, Employer Defendants employed thousands of non-exempt, hourly background actors and stand-ins in New York, and thousands in California. During the AFTRA Retirement Plan Class Period, the SAG Producers Pension Plan Class Period, and the SAG-AFTRA Health Plan Class Period, there were thousands of non-exempt, hourly background actors and stand-ins employed by Employer Defendants in New York and California who were participants and beneficiaries of each of the Plans. The exact number of members of each of the Classes can be determined through the records Defendants are required to keep in the normal course of business.

60.     Plaintiff's claims are typical of the claims of the members of the Classes she seeks to represent, and she has no interests that are antagonistic to, or in conflict with, the interests of the Classes because:

        a.  Plaintiff and the members of the Classes all worked as non-exempt hourly employees for Employer Defendants during the applicable statute of limitations period;

        b.  Plaintiff and the members of the Classes performed similar job duties for Employer Defendants;

        c.  Plaintiff and the members of the Classes were subject to the same policies and procedures relating to their work, time and compensation, which had the common effect of underpaying them for overtime;

d.  Plaintiff and the members of the New York Wage and Hour Class were subject to the same policies and procedures that resulted in the Employer Defendants making unlawful deductions from their wages under the NYLL;

e.  Plaintiff and the members of the New York Wage and Hour Class were subject to the same policies and procedures related to the wage notices and wage statements they received, which had the common effect of failing to provide them with the information required under the NYLL;

f.  Plaintiff and the members of the New York Wage and Hour Class were subject to the same policies and procedures that resulted in Employer Defendants failing to timely pay them for all of their wages earned at least semi-monthly in violation of NYLL § 191(1)(d);

g.  Plaintiff and the other Fraudulent Information Returns Class Members were subjected to Employer Defendants' policy of willfully filing fraudulent information returns that underreported the total amount of the deductions withheld from their wages;

h.  Plaintiff was subjected to the same policies and procedures as the AFTRA Retirement Plan Class Members that resulted in them receiving improperly depressed Employer contributions to the AFTRA Retirement Plans;

i.  Plaintiff was subjected to the same policies and procedures as the SAG Producers Pension Plan Class Members that resulted in them receiving improperly depressed contributions to the SAG Producers Pension Plan; and

j.  Plaintiff was subjected to the same policies and procedures as the SAG-AFTRA Health Plan Class Members that resulted in them

00153810.21

receiving improperly depressed contributions to the SAG-AFTRA Health Plan.

61.     There are many questions of law and fact common to the claims of the members of each of the Classes that concern the legality of policies and practices applicable to all members of each of the Classes that raise many common questions, including:

    a.  whether Employer Defendants have failed to pay the members of the Classes overtime wages owed for all hours they worked over forty per workweek;

    b.  whether Employer Defendants made unlawful deductions from the New York Wage and Hour Class Members' wages;

    c.  whether Employer Defendants have failed to provide the New York Wage and Hour Class Members with wage notices containing their regular hourly rates of pay and their overtime rates of pay;

    d.  whether Employer Defendants have failed to provide the New York Wage and Hour Class Members with wage statements regarding their regular hourly rates and overtime rates of pay, their number of regular hours worked and overtime hours worked, and a truthful description of the deductions from their wages;

    e.  whether Employer Defendants converted the New York Wage and Hour Class Members' wages;

    f.  whether Employer Defendants failed to pay the New York Wage and Hour Class Members their wages earned on a semi-monthly basis;

    g.  whether Employer Defendants willfully filed fraudulent information returns for Plaintiff and the other Fraudulent Information Returns Class Members;

    h.  whether the Plan Defendants were fiduciaries of their respective Plans under ERISA;

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

i.   whether the Plan Defendants failed to loyally and prudently manage the Plans in violation of ERISA;

j.   whether the Plan Defendants knew or should have known that the Employer Defendants were not paying the required contributions into the Plans;

k.   whether the Plan Defendants breached their fiduciary duties by failing to properly respond to the Employer Defendants' underpayment of contributions to the Plans; and

l.   the amount of the losses caused by the Employer Defendants' underpayment of contributions to the Plans.

62.   Plaintiff will fairly and adequately protect the interests of the members of the Classes and has retained competent and experienced counsel for this purpose.

63.   Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual members of the Classes and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation for at least the following reasons:

a.   absent a class action, the members of the Classes will essentially be unable to redress the conduct pled here, the Employer Defendants' and Plan Defendants' violations will continue without remedy and Plaintiff and the members of the Classes will continue to be harmed;

b.   a class action will permit an orderly and expeditious administration of the claims of the members of the Classes, and foster economies of time, effort, and expense;

c.   this lawsuit presents no particularly unusual or difficult issues that would impede its management as a class action;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

d. Employer Defendants have acted on grounds generally applicable to the New York Wage and Hour Class Members, making class-wide management appropriate;

e. Employer Defendants have acted on grounds generally applicable to the Fraudulent Information Returns Class Members, making class-wide management appropriate; and

f. Each of the Plan Defendants has acted on grounds generally applicable to the members of each of the Plan Classes, making class-wide management appropriate.

64. Allowing Plaintiff's claims to proceed as a class action will be superior to requiring the individual adjudication of the claims of each member of the Classes. Requiring the members of the Classes to individually litigate their claims would require thousands of employees to file and litigate individual actions, which would place an undue burden on Defendants, the members of the Classes, and the Courts. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses that would be incurred if these claims were brought individually. Moreover, as the damages suffered by each member of each of the Classes is relatively small, the expenses and burdens associated with individual litigation would make it difficult for them to bring individual claims. Further, the presentation of separate actions by each individual member of each of the Classes on an individual basis could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for the each of the Defendants, and/or substantially impair or impede the ability of the members of the Classes to protect their interests.

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(By Plaintiff, individually, and on behalf of the FLSA Collective Class against**
**Employer Defendants)**

65.    Plaintiff incorporates by reference and realleges each and every one of the allegations contained in paragraphs 1-5, 10-22, 26-27, 33, 35-40, 49, and 50-54 of this complaint against all Employer Defendants as if fully set forth herein.

66.    Throughout the applicable statute of limitations period, Employer Defendants have been, and continue to be, "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Employer Defendants have employed and continue to employ, non-exempt hourly employees, including Plaintiff and each of the members of the FLSA Collective Class.

67.    Plaintiff consented in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as exhibit A is a copy of Plaintiff's Opt-in form. As this case proceeds, it is likely that other individuals will sign consent forms and join as plaintiffs.

68.    The FLSA requires each covered employer such as Employer Defendants to compensate all non-exempt hourly employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.

69.    Plaintiff and the members of the FLSA Collective Class were and are entitled to be paid overtime compensation.

70.    Employer Defendants, pursuant to their policies and practices, failed and refused to pay overtime premiums to Plaintiff and the other members of the FLSA Collective Class at a rate of one-and-one-half times their regular rate of pay for all of their hours worked over 40.

71.    By failing to compensate Plaintiff and the members of the FLSA Collective Class for overtime compensation, Employer Defendants have violated, and

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

continue to violate, the FLSA, 29 U.S.C. §§ 201, *et seq*.

72.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

73.     Plaintiff, on behalf of herself and the FLSA Collective Class, seeks damages in the amount of their unpaid overtime compensation, pre-judgment and post-judgment interest, liquidated damages, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper pursuant to 29 U.S.C. §§ 201, *et seq*.

**SECOND CAUSE OF ACTION**
**UNPAID OVERTIME IN VIOLATION OF NYLL**
**(By Plaintiff, individually, and on behalf of the**
**New York Wage and Hour Class against Employer Defendants)**

74.     Plaintiff incorporates by reference and realleges each and every one of the allegations contained in paragraphs 1-5, 10-22, 26-27, 33, 35-40, 49, and 55-64 of this complaint against all Employer Defendants as if fully set forth herein.

75.     Throughout the applicable statute of limitations period, Plaintiff and the New York Wage and Hour Class Members were "employees" within the meaning of NYLL §§ 2(7), 651(5), 190(2), and 12 N.Y.C.R.R. § 142-2.14.

76.     Throughout the applicable statute of limitations period, Employer Defendants were employers within the meaning of NYLL §§ 651(6) and 190(3).

77.     Throughout the applicable statute of limitations period, Plaintiff and the New York Wage and Hour Class Members have been entitled to the rights, protections and benefits provided under the NYLL §§ 650 *et seq*. and 190 *et seq*.

78.     Plaintiff and the other New York Wage and Hour Class Members are not exempt from overtime compensation as established by the commissioner's wage orders or otherwise provided by New York State law or regulation.

79.     The NYLL provides that employees have the following entitlement to overtime premium wages:

[a]n employer shall pay an employee for overtime at a wage rate of one

and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 U.S.C. 201 et seq. . . .

12 N.Y.C.R.R. § 142-2.2.

80.    Throughout the applicable statute of limitations period, Employer Defendants willfully violated the NYLL, Article 19, §§ 650, *et seq*., and 12 N.Y.C.R.R. § 142-2.2, by failing to pay Plaintiff and the other New York Wage and Hour Class Members all overtime wages of not less than one-and-one-half times their regular hourly wage for each hour worked in excess of 40 hours per workweek.

81.    Employer Defendants have no good faith justification or defense for failing to pay Plaintiff and the New York Wage and Hour Class Members the overtime wages mandated by 12 N.Y.C.R.R. § 142-2.2.

82.    Plaintiff and the other New York Wage and Hour Class Members are entitled to recover the full amount of their wage underpayments, plus an award of liquidated damages as provided for by the NYLL, an award of costs and reasonable attorneys' fees incurred in pursuing this claim, an award of pre-judgment and post-judgment interest paid at the applicable legal rate, and such other equitable relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION
### UNLAWFUL DEDUCTIONS IN VIOLATION OF NYLL
**(By Plaintiff, individually, and on behalf of the New York Wage and Hour Class against Employer Defendants)**

83.    Plaintiff incorporates by reference and realleges each and every one of the allegations contained in paragraphs 1-5, 10-22, 26-27, 33, 35-39, 49, and 55-64 of this complaint against all Employer Defendants as if fully set forth herein.

84.    During the applicable statute of limitations period, Employer Defendants willfully and unlawfully made deductions from the wages of Plaintiff and the other New York Wage and Hour Class Members in violation of NYLL § 193.

85.    Such deductions were itemized on Plaintiff's and the other New York

Class Members' wage statements as, *inter alia*, "Med." "S.S." "Federal" "NY" and "NYCR" which were purportedly deductions to be paid to the government for Medicare, Social Security, Federal Income, New York Income, and New York City Income taxes.

86.    Employer Defendants have willfully retained Plaintiff's and the other New York Class Members' Federal Income Tax, Medicare Tax, Social Security Tax, State Income Tax, and New York City Income tax deductions.

87.    Employer Defendants failed to remit the money purportedly deducted from Plaintiff's and the other New York Wage and Hour Class Members' wages to the appropriate government agencies.

88.    Employer Defendants intended for these deductions to look like deductions for Medicare, Social Security, Federal Income, New York Income, and New York City Income taxes.

89.    Employer Defendants' unlawful deductions from the wages of Plaintiff and the other New York Wage and Hour Class Members were willful within the meaning of NYLL § 663.

90.    Plaintiff and the other New York Wage and Hour Class Members are entitled to recover from Employer Defendants all unlawful wage deductions, together with liquidated damages as provided for by the NYLL, pre-judgment and post-judgment interest at the applicable legal rate, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### FAILURE TO PROVIDE WAGE STATEMENTS IN VIOLATION OF NYLL
### (By Plaintiff, individually, and on behalf of the New York Wage and Hour Class against Employer Defendants)

91.    Plaintiff incorporates by reference and realleges each and every one of the allegations contained in paragraphs 1-5, 10-22, 26-27, 33, 35-40, 42, 49, and 55-64 of this complaint against all Employer Defendants as if fully set forth herein.

92.    NYLL § 195(3) requires employers to furnish each employee with a

statement with every payment of wages, listing the following:  the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages; deductions;  allowances, if any, claimed as part of the minimum wage;  and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay;  the number of regular hours worked; and the number of overtime hours worked.

93.     During the applicable statute of limitations period, Employer Defendants willfully violated NYLL § 195(3) by failing to furnish Plaintiff and the New York Wage and Hour Class Members with a wage statement each pay period listing the foregoing required information, including the name of the employer, the address and phone number of the employer, their regular hourly rate of pay, their correct overtime rate of pay, and a description of each of the deductions from their wages that was accurate rather than false and misleading.

94.     Employer Defendants had no good faith justification or defense for failing to provide the wage statements mandated by NYLL § 195(3).

95.     Due to Employer Defendants' willful violations of NYLL § 195(3), Plaintiff and the New York Wage and Hour Class Members are entitled to recover $250.00 each day that Employer Defendants failed to provide them with the required wage statements, or continued to fail to provide them with the required wage statements, up to a total of $5,000.00 each, plus an award of costs and reasonable attorneys' fees, and injunctive and declaratory relief, as provided for by NYLL § 198(1-d).

**FIFTH CAUSE OF ACTION**
**FAILURE TO PROVIDE WAGE NOTICES IN VIOLATION OF NYLL**
**(By Plaintiff, individually, and on behalf of the New York Wage and Hour**
**Class against Employer Defendants)**

96.     Plaintiff incorporates by reference and realleges each and every one of the allegations contained in paragraphs 1-5, 10-22, 26-27, 33, 35-41, 49, and 55-64 of this complaint against all Employer Defendants as if fully set forth herein.

97.     NYLL § 195(1) requires employers to provide employees with a notice at the time of hire that states their rates of pay and basis thereof, the regular rate of pay, the overtime rate of pay, the name of the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different, and the telephone number of the employer.

98.     During the applicable statute of limitations period, Employer Defendants willfully violated NYLL § 195(1) by failing to provide Plaintiff and the New York Wage and Hour Class Members with a notice at the time of hire that states their rates of pay and basis thereof, the regular rate of pay, the overtime rate of pay, the name of the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different, and a telephone number of the employer.

99.     Employer Defendants have no good faith justification or defense for failing to provide the notice mandated by NYLL § 195(1). Due to Employer Defendants' willful violations of NYLL § 195(1), Plaintiff and the New York Wage and Hour Class Members are entitled to statutory damages of $50.00 per employee for each workday following their tenth day of employment on which Employer Defendants failed to provide the required wage notice, up to $5,000.00 each, plus an award of costs and reasonable attorneys' fees, and injunctive and declaratory relief, as provided for by NYLL § 198(1-b).

1
2
3

**SIXTH CAUSE OF ACTION**
**CONVERSION**
**(By Plaintiff, individually, and on behalf of the New York Wage and Hour**
**Class against Employer Defendants)**

4   100.   Plaintiff incorporates by reference and realleges each and every one of

5   the allegations contained in paragraphs 1-5, 10-22, 26-27, 33, 35-39, 49, and 55-64

6   of this complaint against all Employer Defendants as if fully set forth herein.

7   101.   Upon information and belief Employer Defendants intentionally

8   interfered with the rights of Plaintiff and the other New York Wage and Hour Class

9   Members to ownership of their wages by unlawfully withholding from them sums of

10   money in the amount of the itemized withholdings on their wage statements for

11   "Med." "S.S." "Federal" "NY" and "NYCR."

12   102.   Employer Defendants did not remit to the government the sums of

13   money they withheld from the wages of Plaintiff and New York Wage and Hour

14   Class Members in the amount of the itemized withholdings on their wage statements

15   for "Med." "S.S." "Federal" "NY" and "NYCR," but instead retained this money.

16   103.   Plaintiff and New York Wage and Hour Class Members had a right to

17   possession of the money Employer Defendants withheld from their wages in the

18   amounts itemized on their wage statements as "Med." "S.S." "Federal" "NY" and

19   "NYCR" given that Employer Defendants did not remit the money to the

20   government.

21   104.   Plaintiff and New York Wage and Hour Class Members are entitled to

22   an award of monetary damages, special damages, punitive damages, and reasonable

23   attorneys' fees and costs, and such other legal and equitable relief as the Court

24   deems just and proper.

25   **SEVENTH CAUSE OF ACTION**
26   **FAILURE TO TIMELY PAY WAGES IN VIOLATION OF NYLL**
   **(By Plaintiff, individually, and on behalf of the New York Wage and Hour**
27   **Class against Employer Defendants)**

28   105.   Plaintiff incorporates by reference and realleges each and every one of

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

the allegations contained in paragraphs 1-5, 10-22, 26-27, 33, 35-40, 43, 49, and 55-64 of this complaint against all Employer Defendants as if fully set forth herein.

106.   During the applicable statutory period, Plaintiff and the New York Wage and Hour Class Members have been entitled to the rights, protections and benefits provided under the NYLL §§ 650 *et seq*. and 190 *et seq*.

107.   Plaintiff and the other New York Wage and Hour Class Members are not exempt from overtime compensation as established by the commissioner's wage orders or otherwise provided by New York State law or regulation.

108.   The NYLL provides that:

Clerical and other worker.--A clerical and other worker shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer.

NYLL § 191(1)(d).

109.   During the applicable statutory period, Employer Defendants willfully violated NYLL § 191(1)(d) by failing to pay Plaintiff and the other New York Wage and Hour Class Members all wages earned in accordance with the agreed terms of employment, and not less frequently than semi-monthly, on regular pay days designated in advance by the employer.

110.   Employer Defendants did not have a good faith basis to believe that their underpayment of wages to Plaintiff and New York Wage and Hour Class Members was in compliance with the law.

111.   Employer Defendants' underpayment of wages to Plaintiff and New York Wage and Hour Class Members was willful.

112.   Plaintiff and the other New York Wage and Hour Class Members are entitled to recover from Employer Defendants all unpaid wages, liquidated damages, pre-judgment and post-judgment interest at the applicable legal rate, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## EIGHTH CAUSE OF ACTION
### FRAUDULENT FILING OF INFORMATION RETURNS
**(By Plaintiff, individually, and on behalf of the Fraudulent Information Returns Class against Employer Defendants)**

113.   Plaintiff incorporates by reference and realleges each and every one of the allegations contained in paragraphs 1-5, 10-22, 26-27, 33, 35-40, 44, 49, and 55-64 of this complaint against all Employer Defendants as if fully set forth herein.

114.   26 U.S.C. § 7434(a) provides that:

If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

115.   Throughout the applicable statutory period, each year Employer Defendants have willfully filed fraudulent information returns for Plaintiff and Fraudulent Information Returns Class Members that underreported the amount Employer Defendants withheld from Plaintiff's and Fraudulent Information Returns Class Members' wages for, *inter alia*, Medicare, Social Security, Federal income tax, State income tax, and/or City income tax. Employer Defendants willfully retained money they deducted from Plaintiff's and Fraudulent Information Returns Class Members' wages instead of remitting it to the government.

116.   Pursuant to 26 U.S.C. § 7434(b) Plaintiff and Fraudulent Information Returns Class Members are entitled to the greater of $5,000 each per violation or their actual damages sustained plus costs and attorneys' fees.

117.   Pursuant to 26 U.S.C. § 7434(d) Plaintiff provided a copy of the Complaint to the Internal Revenue Service upon filing the Complaint with the Court.

## NINTH CAUSE OF ACTION
### VIOLATION OF ERISA
**(By Plaintiff, individually, and on behalf of the members of the Plan Classes against Plan Defendants)**

118.   Plaintiff incorporates by reference and realleges each and every one of

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

the allegations contained in paragraphs 1-4, 6, 10-32, 34-38, 45-49, and 55-64 of this complaint against all Plan Defendants as if fully set forth herein.

119.   As alleged above, during the Plan Class Period, Plan Defendants were fiduciaries of the Plans pursuant to ERISA § 402(a)(l), 29 U.S.C. §§ 1102(a)(l) and 1002(21)(A). Thus, they were bound by the duties of loyalty, exclusivity of purpose and prudence.

120.   Yet, contrary to their duties and obligations they failed to loyally and prudently manage the Plans. Specifically, during the applicable statutory period, Plan Defendants knew or should have known that the Employer Defendants were not paying the contribution amounts required into the Plans for Plaintiff and Plan Class Members.

121.   Rather, they breached their fiduciary duties to prudently manage the Plans by failing to respond appropriately to the underpayment of the Employer Defendants' contributions.

122.   As a consequence of their breaches of fiduciary duty alleged in this Count, the Plaintiff and Plan Class Members did not receive the full amount of contributions from the Employer Defendants to which they were entitled, the Plans suffered tremendous losses, and Plaintiff and the Plan Class Members suffered losses to benefits to which they are entitled. If the Plan Defendants had discharged their fiduciary duties to loyally and prudently manage the Plans, significant losses would have been minimized or avoided.

123.   Pursuant to ERISA §§ 409 and 502(a)(2) and (a)(3), 29 U.S.C. §§ 1109(a) and 1132(a)(2), (a)(3), and (g), Plan Defendants are liable to restore the losses caused by their breaches of fiduciary duties alleged in this Count, for attorneys' fees and costs, and to provide other equitable relief as appropriate, including an accounting.

124.   Pursuant to 29 U.S.C. § 1132(h) Plaintiff provided a copy of the Complaint to the Secretary of Labor and Secretary of the Treasury upon filing the

Complaint with the Court.

## TENTH CAUSE OF ACTION
### ACCOUNTING
**(By Plaintiff, individually, and on behalf of the Classes against Defendants)**

125.   Plaintiff incorporates by reference and realleges each and every one of the allegations contained in the preceding and foregoing paragraphs of this complaint against all Defendants as if fully set forth herein.

126.   A balance is due from the Defendants to the Plaintiff and the members of the Classes.

127.   The true amount of money owed by Defendants to Plaintiff and the members of the Classes is unknown.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for an order as follows:

1.   Certifying this matter to proceed as a class action;

2.   Approving Plaintiff as an adequate class representative of the Classes;

3.   Appointing the law firm of Boucher, LLP to serve as Class Counsel;

4.   Authorizing Class Counsel to issue notice informing FLSA Collective Class Members that this action has been filed, of the nature of the action, and of their right to opt-in;

5.   Authorizing Class Counsel to issue a notice informing the New York Wage and Hour Class Members, Fraudulent Information Returns Class Members, and Plan Class Members that this action has been filed, of the nature of the action, and of their right to opt-out of this lawsuit;

6.   Finding that Employer Defendants willfully violated the applicable provisions of the FLSA by failing to pay all required wages to Plaintiff and the FLSA Collective Class Members;

7.   Finding that Employer Defendants willfully violated the applicable provisions of the NYLL and other New York laws by failing to pay all

required wages to Plaintiff and the New York Wage and Hour Class Members;

8.  Finding that Employer Defendants willfully violated 26 U.S.C. § 7434(a) by filing false informational returns for Plaintiff and Fraudulent Information Returns Class Members;

9.  Awarding the maximum statutory, liquidated, and/or punitive damages permitted under the FLSA, the NYLL, New York common law, and 26 U.S.C. § 7434(a);

10.  Finding that Plan Defendants' willful breaches of their fiduciary duties violated the applicable provisions of ERISA;

11.  Ordering that Plan Defendants make good to the Plans and the members of the Plan Classes the losses they suffered as a result of their breaches of their fiduciary duties;

12.  Awarding all available compensatory damages in an amount to be determined;

13.  Awarding to Plaintiff the reasonable costs and attorneys' fees incurred in litigating this action as provided by the FLSA, NYLL, 26 U.S.C. § 7434, ERISA, and other applicable law;

14.  Granting such other relief as may be just and proper, including taxable costs and interest, as provided by law;

15.  Awarding all available equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

16.  Awarding pre-judgment and post-judgment damages;

17.  Maintaining jurisdiction over this action to ensure Defendants' compliance with the foregoing;

18.  Ordering an accounting to determine the amount to be returned by Defendants, and the amounts to be refunded and paid to members of the Classes;

19.  Awarding any further relief the Court deems just, necessary and

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1  proper; and

2      20.     Granting judgment in favor of Plaintiff and the members of the FLSA

3  Collective Class, New York Wage and Hour Class, Fraudulent Information Returns

4  Class, and Plan Classes, on all Counts.

5  DATED:  March 30, 2020               Respectfully submitted,

6                                      BOUCHER LLP

7

8

9                             By: _____

10                                  RAYMOND P. BOUCHER
                                    MARIA L. WEITZ
11                                  JEAN M. SEDLAK

12

13

14                                  *Attorneys for Plaintiff and the Putative*
                                    *Class*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

00153810.21

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1

## DEMAND FOR JURY TRIAL

2

3  DATED:  March 30, 2020      Respectfully submitted,

4                          BOUCHER LLP

5

6

7                          By:

8                          RAYMOND P. BOUCHER
MARIA L. WEITZ

9                          JEAN M. SEDLAK

10

11

12                          *Attorneys for Plaintiff and the Putative Class*

00153810.21

39

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL