UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARA DEROSA, Individually, and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VIACOMCBS INC.; CBS TELEVISION STUDIOS, A DIVISION OF CBS STUDIOS INC.; SESSIONS PAYROLL MANAGEMENT, INC.; FIRSTHAND PRODUCTIONS, INC.; EAST END PRODUCTIONS, INC; SNAPSHOT PRODUCTIONS, INC.; GAIL LEVINE; GREGG LEVINE; BOARD OF TRUSTEES OF THE AFTRA RETIREMENT FUND; BOARD OF TRUSTEES OF THE SAG-PRODUCERS PENSION PLAN; BOARD OF TRUSTEES OF THE SAG-AFTRA HEALTH PLAN; and DOES 1-50,<br><br>Defendants. | Case No. 2:20-cv-02965-WLH(GJSx)<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT (DOCKET NO. 276 & 283)** |

     Before the Court is Plaintiff Sara DeRosa's ("Plaintiff") Motion for Preliminary Approval of Class Action Settlement (the "Motion") with Defendants CBS Studios Inc. ("CBS") and Sessions Payroll Management, Inc. ("Sessions" and together with CBS, "Settling Defendants").[1]  (Docket No. 283).  No opposition to the Motion was filed.

     Pursuant to Fed. R. Civ. P. 78, Local Rule 7-15, and because neither party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter, the Court found that this matter was appropriate for decision without oral argument.  *See* Standing Order for Newly Assigned Civil Cases at 15.

     The Court, having considered all the papers filed and evidence submitted in conjunction with the Motion, **GRANTS** Plaintiff's Motion as follows:

- the proposed settlement as set forth in the Class Action Settlement Agreement (the "Agreement")[2] is preliminary approved because it is fair, reasonable, and adequate, although the Court expects counsel to address certain issues discussed further below in more depth at the final approval hearing;
- the proposed class as defined by the Agreement is preliminarily and conditionally approved for settlement purposes because it satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3);
- Plaintiff is appointed as Class Representative;
- Plaintiff's counsel, Boucher LLP, is appointed as Class Counsel;

---

[1] CBS and Sessions together encompass all other named defendants as past or present parents (including for CBS: Paramount Global (formerly known as ViacomCBS, Inc.)), subsidiaries, corporations, divisions (including for CBS: CBS Television Studios), affiliates (including for Sessions: Firsthand Productions, Inc., East End Productions Inc., RE Productions, Inc., and Snapshot Productions Inc.), and officers (including for Sessions: Gail Levine, and Gregg Levine).  (Docket No. 276-1, Exh. 1 at 3).

[2] Unless specifically defined otherwise, this Order incorporates the defined terms from the Agreement.

- Simpluris is appointed to act as the Settlement Administrator in accordance with the terms set forth in the Agreement; and
- the proposed class notice is approved, and the Court directs the distribution of the Class Notice in accordance with the schedule and procedures set forth in the Agreement.

The Final Approval Hearing will be held on January 26, 2024, at 10 a.m., in Courtroom 9B of the First Street Courthouse of the United States District Court for the Central District of California to determine whether the Court should give final approval to the Settlement as fair, reasonable, and adequate to the Class. At this final hearing, the Court will hear all evidence and argument necessary to evaluate the Settlement and will also consider the motion for approval of attorneys' fees and costs and for approval of the Class Representative Service Payment. Class Members and their counsel may support or oppose the Settlement and the motion for an award of attorneys' fees and costs and the Class Representative Service Payment, if they so desire, as set forth in the Class Notice.

## I. BACKGROUND

### A. Procedural History

On March 30, 2020, Plaintiff filed a class action complaint against Defendants ViacomCBS Inc. ("ViacomCBS"); CBS Television Studios, a Division of CBS; Sessions; Gail Levine; Gregg Levine; (foregoing Defendants, collectively, "Employer Defendants"); Board of Trustees of the AFTRA Retirement Fund ("AFTRA Retirement"); Board of Trustees of the SAG-AFTRA Health Plan ("SAG-AFTRA Health") (SAG Pension, AFTRA Retirement, and SAG-AFTRA Health Defendants, collectively, "Plan Defendants")[3]; and Does 1-50 in the United States District Court, Central District of California. (*See generally* Compl., Docket No. 1). Among other

---

[3] On June 16, 2020, Plaintiff voluntarily dismissed the Plan Defendants and related claims without prejudice, which the Court granted on June 23, 2020. (Docket Nos. 30, 37).

3

1  things, the initial complaint sought to certify multiple classes and alleged various
2  claims of failure to pay overtime wages under the Fair Labor Standards Act against
3  the Employer Defendants and breach of fiduciary duty claims against Plan
4  Defendants.  (*Id.*).

5       On December 29, 2020, Plaintiff filed her First Amended Complaint ("FAC"),
6  the operative complaint, alleging the following seven causes of action: (1) failure to
7  provide wage statements in violation of New York Labor Law ("NYLL") § 195(3)
8  (against Employer Defendants) ("Cause of Action I"); (2) failure to provide wage
9  notices in violation of NYLL § 195(1) (against Employer Defendants) ("Cause of
10 Action II"); (3) unlawful deductions in violation of NYLL § 193 (against Employer
11 Defendants) ("Cause of Action III"); (4) failure to timely pay wages in violation of
12 NYLL § 191(1)(d) (against Employer Defendants) ("Cause of Action IV");
13 (5) conversion (against Employer Defendants) ("Cause of Action V"); (6) fraudulent
14 filing of information returns in violation of 26 U.S.C. § 7344(a) (against Employer
15 Defendants) ("Cause of Action VI"); and (7) accounting (against all Defendants).
16 (Docket No. 76).  Plaintiff did not assert any claims against the Plan Defendants.
17 (*Id.*).

18      Defendants CBS Television Studios and ViacomCBS filed a Motion to Dismiss
19 the FAC on February 1, 2021.  (Docket No. 90).  On March 3, 2021, the Court granted
20 in part and denied in part the Motion to Dismiss FAC without leave to amend as to
21 Cause of Action VI, and Causes of Actions III, IV, V, and VII to the extent they were
22 based on a failure to remit theory.  (*Id.*).

23      On February 3, 2021, Defendants Sessions, Gail Levine, and Gregg Levine filed
24 their Answer, and subsequently filed an Amended Answer on March 5, 2021.  (Docket
25 Nos. 95, 107).  On March 17, 2021, Defendants CBS Television Studios and
26 ViacomCBS filed their Answer, and subsequently filed an Amended Answer on
27 March 1, 2023.  (Docket Nos. 120, 254).
28

Following the motions to dismiss, Plaintiff conducted an investigation and the parties engaged in fact and expert discovery. (Weitz Decl., ¶ 15). The investigation included "interviewing Plaintiff and multiple class members regarding the facts alleged in the complaint, reviewing and analyzing tens-of-thousands of pages of Defendants' records related to class members' wages, [] conducting legal research regarding application of law." (Weitz Decl., ¶ 23). The parties' discovery efforts included exchanging informal and formal discovery requests, deposing several witnesses including Sessions' Payroll Management IT professionals and several Persons Most Qualified on relevant topics, and an analysis of time records and payroll data both by counsel and experts in the fields of data science, statistics, accounting, tax recordkeeping, and computer forensics. (*Id.*).

On June 7, 2022, Plaintiff filed a Motion for Class Certification. (Docket No. 196). After the matter was fully briefed, the Court heard oral arguments on August 8, 2022, from all parties. (Docket No. 223). On October 11, 2022, the Court granted in part and denied in part, Plaintiff's Motion for Class Certification. (Docket No. 231). The Court certified two classes: (1) "a New York Wage and Hour Class under NYLL §§ 191(1)(d), 195(1), and 195(3), consisting of all persons were paid through Sessions [] for work as a background or stand-in actor or CBS television shows in New York, at any time from March 30, 2014 to [October 11, 2022], against Sessions and the Viacom Defendants"; and (2) "a Fraudulent Information Returns Class, under 26 U.S.C. § 7434(a), of all persons who were paid through Sessions [] for work as a background or stand-in actor on CBS television shows in New York or California, at any time from March 30, 2014 through to [October 11, 2022], against Sessions." (*Id.* at 18). The Court appointed Plaintiff Sara DeRosa to serve as the class representative of the New York Wage and Hour Class and the Fraudulent Information Returns Class and appointed Boucher LLP to serve as class counsel for both certified classes. (*Id.*). Although Defendants petitioned the Ninth Circuit Court of Appeals for review, their appeal was ultimately denied without prejudice. (Docket No. 252).

On March 31, 2023, Defendants Sessions, Gail Levine, and Gregg Levine filed their Motion for Summary Judgment as Cause of Action VI. (Docket No. 255). On April 1, 2023, Defendants CBS Television Studios and ViacomCBS, Inc. filed their Motion for Summary Judgment, or alternatively, Partial Summary Judgment of Plaintiff's individual and class claims. (Docket No. 256). Upon joint stipulation of the parties, these motions and other case deadlines were stayed pending settlement. (Docket Nos. 273, 279).

On April 3, 2023, Plaintiff and Settling Defendants and parties' counsel participated in an all-day private mediation presided over by mediator Jeffrey Krivis, Esq. who is experienced in wage class action matters. (Declaration of Maria L. Weitz ("Weitz Decl."), Docket No. 276-1 ¶¶ 19, 21). While the parties did not reach a settlement that day, following subsequent negotiations, the parties reached an agreement on material terms for a proposed settlement on April 6, 2023. (*Id.* ¶ 21). Plaintiff contends that the settlement negotiations were "at arm's length and, although conducted in a professional manner, were adversarial." (*Id.* ¶ 22).

On May 25, 2023, Plaintiff filed her initial motion for preliminary approval of class action settlement and conditional certification of the class for settlement purposes. (Docket No. 276). On July 14, 2023, Plaintiff filed two amended motions including the instant amended Motion incorporating by reference all documents previously filed with Plaintiff's initial motion. (Docket Nos. 281, 283).[4]

---

[4] Plaintiff filed the amended motion because Plaintiff realized that she had not issued notice of the settlement to various government agencies as required by the Class Action Fairness Act of 2005, 28 U.S.C. 1711 *et seq.,* which requires notice of preliminary settlement to appropriate government agencies within ten days of filing a motion for preliminary approval. After providing such notice on July 13, 2023, Plaintiff filed its amended motion. (Docket No. 281). The Plaintiff then refiled the instant second amended motion at the Court's request to fix the time on the caption, which did not match the docket entry. (Docket No. 283). Although Plaintiff has requested that the Court make a finding that this notice was proper, she has not provided the Court with sufficient evidence to make that determination. Nonetheless, the Court may review such request once sufficient information is provided prior to final approval of the settlement.

**B. <u>Settlement Terms</u>**

*i. Proposed Class*

The proposed class as defined by the Class Action Settlement Agreement (the "Agreement") includes all individuals who were payrolled through Sessions (or any of its affiliates such as Firsthand Productions, Inc., East End Productions Inc., RE Productions, Inc., and Snapshot Productions Inc.) for work as a background or stand-in actor on television shows that were produced by CBS or Eye Productions Inc. and that were filmed in New York or California during the period from March 30, 2014, through October 22, 2022 (the "Class"). (Weitz Decl. Docket No. 276-1, Exh. 1 at 1).

*ii. Payment Terms*

Settling Defendants agree to pay $4,000,000.00 (the "Gross Settlement Amount") subject to the terms and conditions of the Agreement. (Weitz Decl., Exh. 1 at 7). The entire Gross Settlement Amount will be dispersed without a claim form requirement and none of the Gross Settlement Amount will revert to CBS and/or Sessions. (*Id.*).

*iii. Attorneys' Fees, Costs, and Service Awards*

The Agreement authorizes class counsel to petition the Court for approval of the following: (1) a Class Representative Service Payment of up to $20,000.00 for Plaintiff; (2) attorneys' fees in an amount no greater than $1,333,333.33 to class counsel; (3) reasonable costs/expenses incurred in this matter of an amount not more than $450,00.00; and (4) Settlement Administrator expenses up to $60,000.00. (*Id.* at 7–8).

The remainder of the Gross Settlement Amount after the above-mentioned allocations—the Net Settlement Amount—will be distributed as payments to the Class Members pursuant to the calculation prescribed in the Agreement. (*Id.* at 9). In sum, this includes dividing the Net Settlement Amount by the "total number of days worked by the Class Members, collectively, during the Class Period to determine a dollar amount per workday ("Daily Amount")" and multiplying it by "the number of

7

1  days worked by each Class Member" to calculate the Settlement Share.  (*Id.* at 9).
2  Any unclaimed amounts will be released after 180 days and allocated in the following
3  priority: (1) payment of any unexpected Settlement expenses; (2) unclaimed property
4  under the law of the state to which the check was mailed.  (*Id.*, Exh.1 ¶ III.E.12).

     *iv. Releases*

6    The Agreement specifies that upon the Effective Date, the Class Members and
7  Plaintiff will release the "Released Parties" of all claims, liabilities, rights, demands,
8  suits, matters, obligations, liens, damages, losses, costs, expenses, debts, actions, and
9  causes of action of every kind and/or nature whatsoever including all of the claims
10  asserted in this lawsuit.  (*Id.* ¶ III.F).  The Agreement defines "Released Parties" as:
11  "CBS, Sessions, CBS's and Sessions' respective past, present and future parents
12  (including for CBS, Paramount Global (formerly known as ViacomCBS Inc.)),
13  subsidiaries, corporations, divisions, affiliates (including, for Sessions, Firsthand
14  Productions Inc.), assigns, shareholders/principals, managers, officers (including for
15  Sessions, Gail Levine and Gregg Levine), partners, members, directors, agents,
16  employees, attorneys, insurers, predecessors, successors, and anyone else who could
17  be liable through such persons or entities for the acts released by this Agreement.

     *v. Notice to Settlement Class*

19    The Settlement Administrator will send all Class Members Class Notice via e-
20  mail within 14 days of the instant Order Granting Preliminary Approval of the
21  Settlement using Class Data provided by Sessions.  (*Id.* ¶¶ III.E.2.a–b).  If the
22  Settlement Administrator does not have an e-mail address for a Class Member, or
23  notice sent to a Class Member is returned or undeliverable, then the Settlement
24  Administrator will send Class Notice via first-class regular U.S. Mail.  (*Id.* ¶ III.E.2.c).
25  If any of the mail is returned as undeliverable, the Settlement Administrator will
26  within 14 days continue to make efforts to locate a more current address for the Class
27  Member.  (*Id.* ¶ III.E.2.c).  At least ten days before the Motion for Final Approval, the
28  Settlement Administrator will provide the Settling Parties a declaration to be filed

with the Court detailing its efforts including opt-out information and objections, if any. (*Id.* ¶ III.E.2.g).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial review and approval of any class settlement. "Preliminary approval and conditional certification are the first stage of the approval process." *Grady v. RCM Techs., Inc.*, No. 522CV00842JLSSHK, 2023 WL 3327093, at *2 (C.D. Cal. May 2, 2023).

To preliminarily approve a class action settlement, the Court must find that the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2). *See e.g., Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). Specifically, the Court must examine the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Notably, because some factors cannot be fully assessed at this preliminary approval stage, a full fairness analysis is unnecessary, and the Court need only "evaluate the terms of the settlement to determine whether they are within a range of possible judicial approval." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 472 (E.D. Cal. 2009). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the

settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Lastly, where a class has yet to be certified the Court must conditionally certify a class for purposes of settlement by determining if the proposed class satisfies the requirements of Rule 23(a) and one of the three categories of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

## III. DISCUSSION

### A. Approval of Proposed Settlement

#### i. Adequacy of Counsel

Proposed class counsel, Boucher LLP, is experienced class counsel with prior experience representing plaintiffs in complex class actions in both state and federal courts. (Weitz Decl. ¶ 30; Exhs. 3, 4). In this matter, class counsel has adequately represented Plaintiff and the putative class. In fact, the settlement is the culmination of class counsel's work from the filing of the initial complaint in this matter in 2020 through various phases of litigation including motions to dismiss, discovery, class certification, and settlement negotiations. Accordingly, this factor weighs in favor of preliminary approval.

#### ii. Arms-Length Negotiation

Based on Plaintiff's assertions, the settlement negotiations and Agreement appear to be the result of arms-length negotiations. The negotiation process took multiple days, was professional but adversarial with each party represented by its respective counsel, and occurred before a private mediator experienced in wage class action matters. (*Id.* ¶¶ 19, 21–22); *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 666–67 (E.D. Cal. 2008) (noting the parties' enlistment of "a prominent mediator with a specialty in [the subject of the litigation] to assist the negotiation of their settlement agreement" as an indicator of non-collusiveness) (*citing Parker v. Foster*, No. 05–0748, 2006 WL 2085152, at *1 (E.D.Cal. July 26, 2006)).

1  Prior to mediation, the parties engaged in extensive investigation and fact and
2  expert discovery, which included interviewing Plaintiff and multiple class members,
3  reviewing and analyzing tens-of-thousands of pages of Defendants' records regarding
4  class members' wages, and conducting legal research regarding application of law.
5  (Weitz Decl., ¶¶ 15, 23). The parties also exchanged multiple discovery requests,
6  deposed various witnesses including Sessions' Payroll Management IT professionals
7  and several Persons Most Qualified on relevant topics, and retained experts in the
8  fields of data science, statistics, accounting, tax recordkeeping, and computer
9  forensics to analyze time records and payroll data. (*Id.*).

10  In sum, the Court is satisfied that the Agreement was the product of "serious,
11  informed, non-collusive negotiations." *See Spann*, 314 F.R.D. at 319. Accordingly,
12  this factor weighs in favor of preliminary approval.

13       *iii. Adequacy of Relief*

14  The proposed relief appears to be adequate in that it is reasonable and fair to
15  class members. In general, a trial presents a serious risk due to the uncertainty of the
16  outcome and the expensive cost of litigation. "Even a fractional recovery of the
17  possible maximum recovery amount may be fair and adequate in light of the
18  uncertainties of trial and difficulties in proving the case." *Millan v. Cascade Water*
19  *Servs., Inc.*, 310 F.R.D. 593, 611 (E.D. Cal. 2015).

20  Here, based on Plaintiff's investigation and analysis including consultation with
21  retained experts, the maximum potential damages awardable on the NYLL claims,
22  exclusive of interest, is approximately $10,144,750. (Weitz Decl. ¶ 27). With the
23  proposed settlement payment of $4,000,000.00, this results in an approximate 39%
24  recovery of maximum value. (*Id.*). With respect to the Fraudulent Tax Return claim,
25  which is asserted against only Sessions, the maximum potential awardable damages
26  "far exceeds Sessions' assets and insurance such that there is no realistic possibility to
27  collect a favorable judgment on the claim." (*Id.*). Given the pending dispositive
28  motions for summary judgment, the contested nature of the claims, and the uncertainty

11

and expense of trial, the Court finds that the recovery ratio is adequate. *See Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (finding that a proposed class action settlement is "not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators" given the uncertainty of litigation and avoidance of expensive and protracted litigation).

The Court cautions counsel, however, that the maximum collectable attorneys' fees amount of $1,333,333.33 and reasonable costs and expenses of $450,000.00 is high. Courts have discretion to use either a percentage or the lodestar method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Using the percentage method, the Ninth Circuit has set a benchmark for attorneys' fees in common fund cases at 25% of the fund. *Id.* ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."). The Court will consider the specific circumstances of this matter including the advanced stage of litigation, hearings, motion practice, and extensive discovery in its decision to award attorneys' fees and reasonable expenses. *See e.g., id.* (finding that an award of 25% of the fund was justified by "excellent results," "extremely risky" litigation, and more than a decade of litigation). Proposed class counsel is advised to provide a detailed breakdown of legal costs under both a percentage and lodestar method for detailing attorneys' fees.

Furthermore, the Court is concerned about the fairness of the $20,000.00 award for proposed lead Plaintiff given the potential disparity between the Plaintiff's award compared to the award for the typical class member. This is especially true here given the distribution of settlement amounts is based on a share of Workdays, which could result in greatly disproportionate awards. *See e.g., Alberto*, 252 F.R.D. at 669–70 (finding that a service award with a disparity of $5,000 to $24.17 and $2,000 to $23 to be disproportionately large). Although the Plaintiff has undertaken substantial efforts and personal risk on behalf of the class, the Court expects evidence of not only

Plaintiff's substantial efforts, but also the comparison of Plaintiff's award to the average and median expected award to class members.

Despite the Court's concerns, which must be addressed prior to final approval, the Court finds that this factor weighs in favor of preliminary approval because these concerns may be resolved at the Final Approval Hearing.

### iv. Equitable Treatment

Lastly, the Court finds that the settlement, with the exception of the above-mentioned concerns regarding Plaintiff's service award, does not provide preferential treatment to any proposed class member. The proposed distribution method appears to provide equal relief to all proposed class members using a distribution method calculated by the "total number of days worked by the Class Members, collectively, during the Class Period to determine a dollar amount per workday ("Daily Amount")" and multiplying it by "the number of days worked by each Class Member" to calculate the Settlement Share. (*Id.* at 9). This final factor weighs in favor of preliminary approval.

### B. Class Certification

Next, the Court must determine whether the class may be preliminary and conditionally certified for settlement purposes. Class certification is a prerequisite to preliminary settlement approval. *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) ("[A]lthough the fact of settlement is relevant to the class certification analysis, certification must nonetheless meet Rule 23(a) and (b)[] requirements…").[5] Class certification is appropriate only if each of the four

---

[5] Although the Court previously certified two classes, the Agreement combines the two classes into a slightly different proposed class. (*Compare* Order Granting Class Certification, Docket No. 231; *with* Weitz Decl. ¶ 3). Ordinarily, in instances where a class is already certified, the only information necessary is whether the proposed settlement "calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Advisory Comm. Notes to 2018 Amendments, Fed. R. Civ. P. 23(e). Plaintiff, rather, requests that the Court preliminarily and conditionally certify the proposed class for settlement purposes despite the similarities between the already certified classes and the proposed class.

requirements of Rule 23(a) and at least one of the requirements of Rule 23(b) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Under Rule 23(a), the plaintiff must show: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Court will address each Rule 23(a) and Rule 23(b)(3) factor in turn.

### i. Numerosity

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impractical." *Id.* While "[n]o exact numerical cut-off is required," "numerosity is presumed where the plaintiff class contains forty or more members." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009).

Here, the parties represent that there are approximately 15,629 potential members of the class. (Weitz Decl. ¶ 3). Thus, the putative class meets the numerosity requirement. *See e.g., Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013) (finding that class of 500 putative class members satisfied the numerosity requirement).

### ii. Commonality

The second factor under Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a). Courts have held that even a "single common question will do." *Wal-Mart v. Dukes*, 564 U.S. 338, 359 (2011). The common question cannot just be any question, however; it must be one that can "generate common answers apt to drive the resolution of the litigation." *Id.* (quoting Richard Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L.

---

Nevertheless, the Court will undergo the Rule 23(a) and 23(b) analysis as if a class had never been certified in this matter to determine whether the proposed class is preliminarily and conditionally certified for settlement purposes.

14

Rev. 97, 132 (2009)) ("'What matters to class certification . . . is not the raising of common 'questions' - even in droves - but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation.'"). In class actions challenging employer conduct, the plaintiff must present "significant proof" that the employer operated under a uniform policy or practice to show commonality. *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 543 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 353).

Here, Plaintiff alleges that Defendants engaged in a uniform policy or practice related to its payroll process to pay class members wages across the various CBS shows. (FAC ¶ 55). Plaintiff asserts that some of the common questions of law and fact include: "(1) whether Defendants made unlawful, improper, and/or inaccurate deductions from their wages in violation of NYLL § 193; (2) Whether Defendants failed to furnish a statement with every payment of wages listing the name of the employer, the address and phone number of the employer, the correct rate or rates of pay, the regular rate of pay, the correct overtime rate of pay, and a truthful description of each of the deductions from their wages in violation of NYLL § 195(3); (3) Whether Defendants failed to provide them with a notice at the time of hiring containing the rates of pay and basis thereof, the regular rate of pay, the overtime rate of pay, the name of the employer, the physical address of the employer's main office or principal place of business, and a mailing address if different, and a telephone number of the employer, in violation of NYLL § 195(1); (4) Whether Defendant converted their wages in violation of New York law; (5) Whether Defendant failed to pay all wages earned at least semi-monthly in violation of NYLL § 191(1)(d); and (6) Whether Sessions filed fraudulent information returns in violation of 26 U.S.C. § 7434(a)." (*Id.*). This conduct affects each putative class member in the same manner. Accordingly, the Court preliminarily finds that Settling Defendants' practices establish significant common questions of fact and law sufficient to satisfy commonality.

*iii. Typicality*

The third factor under Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative part[y] are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). The purpose of the typicality requirement is "to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), *overruled on other grounds by Dukes*, 564 U.S. at 347–48. Typicality "is a permissive standard, and "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites*, 209 F.R.D. 159 (C.D. Cal. 2002) (quoting *Hanlon*, 150 F.3d at 1020). The Ninth Circuit does not "insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct." *Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. 2001).

Here, similar to the other Class Members, Plaintiff was a non-exempt stand-in performer working for two CBS shows in New York during the Class Period and payrolled by Sessions or its affiliates. (Weitz Decl., ¶ 29). Plaintiff's claims arise from the same alleged uniform policies and practices as the rest of the class members. As such, Plaintiff's claims are based on the same facts and legal theories applicable to the rest of the class members. Accordingly, the Court finds that typicality is satisfied.

*iv. Adequacy*

The fourth factor under Fed. R. Civ. P. 23(a)(4) requires that Plaintiff and class counsel adequately represent absent Class Members. Fed. R. Civ. P. 23(a)(4). To satisfy the adequacy inquiry, courts must ask two questions "(1) Do the representative [p]laintiff[s] and their counsel have any conflicts of interest with other class members, and (2) will the representative [p]laintiff and their counsel prosecute the action vigorously on behalf of the class?" *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 957

(9th Cir. 2003). Here, Plaintiff contends that Plaintiff and class counsel have no conflict of interest with other class members. (Weitz Decl. ¶ 29). Furthermore, Plaintiff's counsel contends it is experienced class counsel and supports its claims with various declarations and supporting documents including the *curriculum vitae* of the various attorneys working on the matter. (*Id.*, Exhs. 3, 4). Accordingly, the Court finds that Plaintiff and Class Counsel satisfy the adequacy of representation factor.

>     v.   Rule 23(b)(3) Requirements

Plaintiff seeks certification under Rule 23(b)(3), which requires the court to find "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The requirement is satisfied if a plaintiff establishes that a 'common nucleus of facts and potential legal remedies dominates' the litigation." *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 473 (E.D. Cal. 2009) (quoting *Hanlon*, 150 F.3d at 1022).

Here, as discussed above, Plaintiff's claims arise from the same alleged uniform policies and practices as the rest of the class members. Likewise, the same facts and legal theories are applicable to the rest of the class members. This common nucleus of facts can be resolved for all class members in a single adjudication. Moreover, the significant size of the class, potential expensive cost of individual litigation, and the strain on judicial resources support adjudicating the claims in a class action. Accordingly, the Court finds that Rule 23(b)(3) is satisfied.

### C. Notice and Settlement Administration

Under Rule 23, "the court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Class notice must state "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any

member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).  Notice is satisfactory if it "generally describe[s] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (internal quotation marks omitted).  It "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Id.*

Here, the Court finds that the proposed Class Notice is satisfactory as it contains the required information under Rule 23(c)(2)(B). (*See e.g.,* Weitz Decl., Exh. 1 ¶ III.E.2; Exh. A). Further, the Court finds the notice plan as described in the Agreement is proper because individual notice will be provided (through a common and customary method of communication) to all Class Members whose identities are known to the Parties. (*Id.* ¶¶ III.E.2.a–b). The Parties' proposed Class Notice sufficiently informs Class Members of the terms of the Settlement, their rights under the Settlement, their right to object to the Settlement, their right to receive a Settlement Share or elect not to participate in the Settlement, and the processes for doing so, and the date and location of the final approval hearing, and therefore is approved.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **GRANTED** as follows:

- the proposed settlement as set forth in the Agreement is preliminary approved because it is fair, reasonable, and adequate, with the understanding that Court expects counsel to address certain issues discussed above in more depth at the final approval hearing;
- the proposed class as defined by the Agreement is preliminarily and conditionally approved for settlement purposes because it satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b)(3);

18

- Plaintiff is appointed as Class Representative;
- Plaintiff's counsel, Boucher LLP, is appointed as Class Counsel;
- Simpluris is appointed to act as the Settlement Administrator in accordance with the terms set forth in the Agreement; and
- the proposed class notice is approved, and the Court directs the distribution of the Class Notice in accordance with the schedule and procedures set forth in the Agreement.

The Final Approval Hearing will be held on January 26, 2024, at 10 a.m., in Courtroom 9B of the First Street Courthouse of the United States District Court for the Central District of California. Class Counsel must file their motion for attorneys' fees and costs no later than the date Plaintiff files the Motion for Final Approval, and the motion will be heard at the Final Approval Hearing.

**IT IS SO ORDERED.**

Dated: September 26, 2023  _____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE